## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2018, 10:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert W. Hammerle
Hackman Hullet LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bradley Back,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff.*

August 20, 2018

Court of Appeals Case No.
18A-CR-583

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-1704-F2-12

**Brown, Judge.**

[1] Bradley Back appeals the trial court's denial of his Verified Motion to Reduce Bail. We affirm.

## Facts and Procedural History

[2] On April 18, 2017, the State charged Back with: Count I, manufacturing or possessing a destructive device as a level 5 felony; Count II, attempting to manufacture a destructive device as a level 5 felony; and Count III, criminal recklessness while armed with a deadly weapon as a level 6 felony. An entry in the chronological case summary ("CCS") dated April 20, 2017, provides: "Bail Order - Bail set in amount of $250,000 Cash and $500,000 Surety." Appellant's Appendix Volume II at 4. On April 25, 2017, the State filed a motion for leave to amend the charging information to add a charge of possessing a destructive device as a level 2 felony, to be numbered as Count I, and to renumber the remaining counts, and the court granted the motion.

[3] On May 3, 2017, Back filed a motion for reduction of bond in which he requested that he be released on home detention to live with his parents and stated that he would be under constant supervision by a family member. Five days later he filed a supplement stating that his father was offering to post a property bond consisting of his home and 23.42 acres valued at approximately $350,000, and that his mother was offering to post a property bond consisting of 21.348 acres valued at approximately $125,000. That same day the State filed a motion to increase bond stating that the charges had been amended to level 2 felony status.

[4] On May 9, 2017, the court held a bail hearing. On May 15, 2017, the court issued a Second Bail Order which included the following findings:

> 6. Defendant does not have a criminal record or history of failure to appear.
>
> 7. Defendant had a gallbladder surgery on February 24, 2017 and still receives medication for this medical procedure.
>
> 8. The Court considers that a support group consisting of over twenty people have come to court to support the Defendant on multiple occasions.
>
> 9. Defendant was employed at Equipment Depot in Erlanger Kentucky at the time of his arrest.
>
> 10. Defendant owns a home in Dearborn County with equity over $40,000.00.
>
> 11. Defendant's Mother and Father own real property in Franklin County, Indiana valued [at] over $475,000 without any mortgages.
>
> 12. Defendant has recently received treatment from numerous mental health providers including the Lindner Center in Cincinnati Ohio and a hospital in West Chester Ohio. At the May 9, 2017 hearing, a future treatment plan was not in place but the Court was advised the family would continue to assist the Defendant in obtaining help. In documents filed after the hearing a more detailed plan was provided.
>
> 13. Prior to April 1, 2017, Defendant had overdosed on medications.
>
> 14. The Court was advised Defendant's Mother, Father, and other family and friends had been staying with Defendant and desperately attempting to help him in weeks leading up to the alleged explosion.

15. The Court was advised that an individual with felony convictions for Dealing Cocaine as well as Possession of Methamphetamine and Cocaine, was a tenant and friend at his Mother's home, but all parties agreed he could reside elsewhere.

16. On April 1, 2017, Defendant's family sought the help of the Indiana State Police when rubber gloves, a handgun, rope, zip ties, and duct tape were located in Defendant's belongings. Dearborn County Deputy Sheriff David Jones testified this was characterized as an "abduction kit" through his training and experience. Defense counsel argued this evidence was consistent with suicidal ideations. Deputy Jones testified Defendant showed no signs of suicide on that day but that the Defendant did not like his physician so the group assembled of family and law enforcement was trying to find a different health provider.

17. In short, the State argues for purposes of bail that Defendant is homicidal and suicidal and Defense argues for purposes of bail that Defendant is suicidal only.

18. On April 2, 2017, Defendant was released from the mental health treatment that his mother had taken him to the day before. On April 2, 2017, Defendant came to his father's home to get his stuff. Deputy Jones testified that his father stated to him that the Defendant asked for a gun. At the second bail hearing, Defendant's father testified that he only assumed Defendant wanted a gun. Defendant's father then called the police after he had not had any further communication with the Defendant after he left his home for three to four more hours and he became very worried. A countywide broadcast was issued to look for the Defendant.

19. Indiana State Police Trooper Daniel W. Smith testified that he responded from three hours away on Easter Sunday as a member of the ISP Explosive Ordinance Disposal (EOD) Unit Team on April 16, 2017 when an explosion occurred in Dearborn County. Trooper Smith advised that shrapnel in the form of metal nuts were located as well as a gift bag near the explosion.

He testified that shrapnel was used as means of intimidation and injury. He further testified that if someone would have been in close proximity to the device it could have been fatal.

20. The State presented evidence that first responders including firemen and law enforcement were put in grave danger when they bravely responded to the home and entered the home without fulling [sic] knowing what may still be active inside at that time, to protect the community.

21. The explosion at 2567 Ledgestone Dr. in West Harrison, Dearborn County, Indiana was so severe that walls of the home were moved over four (4) inches. These shocking gaps in walls were illustrated in photographs submitted at the second bail hearing.

22. Dearborn County Deputy Sheriff Detective Garland Bridges testified that a search of Defendant's tablet revealed the following internet searches: cold cases, mob hits, how gas engines work, temperature that ignitor fluid ignites, homemade explosives, SUV fuel tank location, pressure cooker bombs, phone tracker searches, and firearm searches.

23. Detective Bridges testified that the tablet search revealed repeated, continual trolling and searches of his ex-girlfriend, Tracy Henderson's Facebook account. Also, that Defendant had made numerous attempts for Ms. Henderson's Facebook account to be sent directly to him, he had left letters on Ms. Henderson's car at her work; Defendant came to Ms. Henderson's work, and Defendant gave Ms. Henderson's Children Easter cards after the break up.

24. Detective Bridges testified the Defendant had numerous smart phone apps such as Hover Watch, Bluff, and Spoof that could be used to locate or track someone and make a phone number look like it was a different phone number.

25. The Court was advised that the Defendant and Ms. Henderson had recently broken up.

26. The Court was advised that a previous Defendant suicide attempt occurred in Delhi, Ohio, near Ms. Henderson's home.

27. In a Memorandum filed May 12, 2017, Defendant advised that he did not contest an Order of Protection entered in Hamilton County Ohio for Tracy Henderson against the Defendant. In the Order of Protection Affidavit Ms. Henderson stated the Defendant had been harassing her electronically and had left notes on her car at work, that Defendant has followed her home from work and left cards at her house, and Defendant is messaging her children.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED the Court finds by clear and convincing evidence that the defendant poses a significant risk to the physical safety of the community and that he is a significant risk to not appear at future hearings. The Court denies the Defendant's Motions to Modify and Reduce Bail and the State's Motion to Increase Bail.

*Id.* at 72-75. On May 24, 2017, Back filed a Motion to Amend Bail Order requesting that bail be set to reflect either a $250,000 cash bond or a $500,000 surety bond, and the court denied the motion.

[5] On May 25, 2017, a $250,000 cash bond and a $500,000 surety bond were posted on Back's behalf and he was released from custody.

[6] On February 9, 2018, Back filed a Verified Motion to Reduce Bail. Back argued that his bail is excessive because it is significantly greater than an amount that would be reasonably calculated to assure his presence at trial. He further stated that he had been "diagnosed with autism/Asperger's and has been seeing a therapist on a weekly basis for many months" and that he "has at all times timely appeared for his court hearings and is in no danger of fleeing to

avoid prosecution." *Id*. at 84-85.  The motion stated: "In order to post the $250,000.00 cash bond, [Back's] family had the good fortune to receive help from family members.  A loan was also secured from a local bank.  Finally, 42 acres of their personal property . . . was put up as collateral for the surety bond." *Id*. at 85.  He stated that, since he has been out on bond, he has complied with all conditions set by the court and has demonstrated respect for the court's authority and ability to appear at all required proceedings.  He requested that the court reduce his bail to a surety bond only, in the alternative to reduce his cash bond to no more than $25,000, or to set the matter for a hearing.

[7]     On February 21, 2018, the court issued an order denying Back's motion based upon the reasons provided in the Second Bail Order.

## *Discussion*

[8]     Back claims that the trial court erred in denying his motion to reduce bail.  The amount of bail is within the sound discretion of the trial court.  *Cole v. State*, 997 N.E.2d 1143, 1145 (Ind. Ct. App. 2013) (citing *Sneed v. State*, 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011) (citing *Perry v. State*, 541 N.E.2d 913, 919 (Ind. 1989))).  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.  *Id.*

[9]     The Indiana Constitution prohibits excessive bail.  IND. CONST. art. 1, § 16.  The purpose of bail is to ensure the presence of the accused when required without the hardship of incarceration before guilt has been proved and while

the presumption of innocence is to be given effect. *Hobbs v. Lindsey,* 240 Ind. 74, 78, 162 N.E.2d 85, 88 (1959). The object of bail is not to effect punishment in advance of conviction. *Id.* The right to freedom by bail pending trial is of special significance to the accused who must prepare his defense in the interim. *Id.* at 79, 162 N.E.2d at 88. Bail is excessive if set at an amount higher than reasonably calculated to ensure the accused party's presence in court. *Cole,* 997 N.E.2d at 1145 (citing *Sneed,* 946 N.E.2d at 1257 (citing *Hobbs,* 240 Ind. at 79-81, 162 N.E.2d at 88-89 ("Having thus made a prima facie case of excessiveness, the petitioner could rest and the burden then shift to the state to show the necessity or justification for the unusual amount of bail required."))).

[10] Ind. Code § 35-33-8-4(b) provides in part that "[b]ail may not be set higher than that amount reasonably required to assure the defendant's appearance in court or to assure the physical safety of another person or the community if the court finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community." The statute also provides that, in setting bail, the judicial officer shall take into account all facts relevant to the risk of nonappearance including:

> (1) the length and character of the defendant's residence in the community;
>
> (2) the defendant's employment status and history and the defendant's ability to give bail;
>
> (3) the defendant's family ties and relationships;
>
> (4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring the defendant to trial;

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance;

(9) that the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and

(10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring the defendant to trial.

Ind. Code § 35-33-8-4(b).

[11] Ind. Code § 35-33-8-5 governs the alteration of bail and provides:

(a) Upon a showing of good cause, the state or the defendant may be granted an alteration or revocation of bail by application to the court before which the proceeding is pending. . . .

(c) When the defendant presents additional evidence of substantial mitigating factors, based on the factors set forth in section 4(b) of this chapter, which reasonably suggests that the defendant recognizes the court's authority to bring the defendant to trial, the court may reduce bail. However, the court may not reduce bail if the court finds by clear and convincing evidence that the factors described in IC 35-40-6-6(1)(A) and IC 35-40-6-

6(1)(B)[1] exist or that the defendant otherwise poses a risk to the physical safety of another person or the community.

[12] Back maintains that a review of the statutory factors found in Ind. Code §§ 35-33-8-4(b) and 35-33-8-5(c) weigh heavily in favor of a reduction in bail. He argues the State filed no responsive pleading in objection to his February 9, 2018 motion and that his motion presented significant additional evidence of substantial mitigating factors beyond what was presented at the May 9, 2017 hearing. He points to the fact that he had been diagnosed with Asperger's syndrome and has been receiving treatment for many months, that he was present at every court hearing since his release and was fully in compliance for almost nine months at the time he filed the motion, and that his parents are the source of the funds used to post his cash and surety bonds and, even with the reduction of the cash portion of his bond, they would risk losing their home and forty-two acres of land if he failed to appear for trial.

[13] The State argues the court did not abuse its discretion in denying Back's third request to reduce his bail because it found by clear and convincing evidence that he poses a significant risk to the physical safety of the community. The State

---

[1] Ind. Code § 35-40-6-6(1)(A) and (B) provide:

> (A) that an act or threat of physical violence or intimidation has been made against the victim or the immediate family of the victim; and

> (B) that the act or threat described in clause (A) has been made by the defendant or at the direction of the defendant; . . . .

argues that "Back rightly does not challenge any of the trial court's findings of fact as clearly erroneous because they are well-supported by the record." Appellee's Brief at 16. The State also maintains that Back failed to meet his burden to present additional evidence of substantial mitigating factors, the claimed financial struggles of Back's parents is not evidence of a substantial mitigating factor and the court is not required to reduce bail to a level that Back or his family can easily afford, and Back's Asperger's syndrome is not additional evidence of a substantial mitigating factor because Back's mental health status was known when his bail was initially set. It also notes Back is charged with four felonies including a level 2 felony which carries a maximum sentence of thirty years.

[14] We note that Back does not challenge the factual findings set forth in the court's Second Bail Order. According to the court's findings, Back had recently received treatment from mental health providers; prior to April 1, 2017, Back had overdosed on medications; on April 1, 2017, Back's family sought the help of police when rubber gloves, a handgun, rope, zip ties, and duct tape were located in Back's belongings which law enforcement characterized as an "abduction kit"; defense counsel argued for purposes of bail that Back was suicidal only; on April 16, 2017, an explosion occurred at 2567 Ledgestone Dr. which was so severe that walls of the home were moved over four inches; law enforcement advised that shrapnel in the form of metal nuts were located as well as a gift bag near the explosion; there was testimony that a search of Back's tablet revealed searches including "temperature that ignitor fluid ignites,"

"homemade explosives," "pressure cooker bombs," and a "phone tracker," that the tablet revealed "repeated, continual trolling and searches of his ex-girlfriend," and that Back had numerous phone applications that could be used to locate or track a person; and the court was advised that Back had previously attempted suicide near his ex-girlfriend's home. Appellant's Appendix Volume II at 73-74. Back has been charged with several crimes including possessing a destructive device as a level 2 felony. In addition to finding that he was a risk to not appear at future hearings, the court found by clear and convincing evidence that Back poses a significant risk to the physical safety of the community. *See* Ind. Code § 35-33-8-5(c) (providing the court may not reduce bail if it finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community). Even in consideration of the length of time Back had been out on bond and in compliance with the terms of his release, his Asperger's syndrome diagnosis and treatment, and the source of funds used to post or secure his bond, we cannot conclude that the trial court abused its discretion in declining to find that Back has made a showing of good cause to support the alteration or reduction of the amount of his cash bond or in finding that Back poses a risk to the physical safety of another person or the community.

## *Conclusion*

For the foregoing reasons, we affirm the trial court's February 21, 2018 order.

Affirmed.

Altice, J., and Tavitas, J., concur.